[1] This is an action for damages for personal injuries which plaintiff, Harry L. Voyles, claims to have sustained by being struck in the face by a loosely fastened tarpaulin covering the trailer of a truck owned and operated by defendant, Columbia Terminals Company.
[2] The jury returned a verdict in favor of plaintiff for the sum of $3,000, the full *Page 871 
amount sued for. Judgment was entered accordingly; and following an unavailing motion for a new trial, defendant gave notice of appeal, and by subsequent steps has caused the case to be transferred to this court for our review.
[3] The accident is alleged to have occurred on Fourth Street at its intersection with Washington Avenue, in the City of St. Louis.
[4] Plaintiff was walking eastwardly along the south side of Washington Avenue on his way to a bus stop near the end of Eads Bridge, where he expected to board a bus for his home in Belleville, Illinois. Just as he stepped down from the curb on the west side of Fourth Street, traffic was changed to north and south. According to plaintiff's version of the facts, he remained standing a foot or so out from the curb while he waited for a break in the traffic before continuing across the street. Among the vehicles traveling southwardly on Fourth Street were two tractor-trailer trucks belonging to defendant, the one following closely behind the other. The body of each trailer was completely covered by a tarpaulin for the protection of whatever was being carried by the truck. The tarpaulin over the first trailer was apparently securely fastened, but not so the tarpaulin over the second trailer, which was loose so that it flapped in the wind. The first truck passed plaintiff without incident, but as the second truck was passing him, the tarpaulin flapped out from the side of the truck, striking him across the face, and inflicting the injuries for which he seeks to be compensated in this proceeding.
[5] One Bridges, who had been following some little distance behind plaintiff, helped him to his feet and assisted him across the street and to a tavern in the middle of the block, where he was found by the police officers, who had him removed to City Hospital. Bridges corroborated plaintiff's testimony in regard to how the accident had occurred.
[6] The negligence relied on was the act of defendant in having the tarpaulin so insecurely fastened as to permit it to flap out from the body of the truck. Issue was joined by a general denial coupled with a subsequently abandoned plea of contributory negligence.
[7] Three police officers testified in the case, the one as a witness for plaintiff and the other two as witnesses for defendant; and the sole question on this appeal is whether the court committed error in permitting plaintiff's counsel, during his cross-examination of the two who testified for defendant, to attempt to have such officers refresh their respective memories as to how the accident had occurred by recourse to the police report which had been prepared in accordance with the usual practice of the police department. Originally the claim of error had likewise embraced the refreshing of the memory of the officer who testified as plaintiff's own witness, but that phase of the matter has been abandoned in the final submission of the case.
[8] It is a settled rule that a witness who does not recall or is uncertain about matters concerning which he is called upon to testify may be permitted, and even compelled, to refresh his memory by referring to writings, records, and the like, and then to testify in regard to those matters where his memory has been so refreshed that he is able to testify from his present recollection independent of the source by which his memory was revived. Nor, in refreshing his recollection, is the witness to be confined to writings and records which he himself has made, but he may as well be permitted to refer to writings or records made by another person which he knows to be correct. State v. Patton, 255 Mo. 245, 164 S.W. 223; Taussig v. Schields, 26 Mo.App. 318; 70 C.J. 577 et seq.; 58 Am.Jur., Witnesses, secs. 579, 583, 584, 586, 590.
[9] Generally speaking, the question of whether a witness may be allowed to refresh his recollection is a matter reposing in the discretion of the trial court, reviewable only for abuse. Winn v. Modern Woodmen of America, 157 Mo.App. 1, 137 S.W. 292; 70 C.J. 578; 58 Am.Jur., Witnesses, sec. 581. However a sound discretion would ordinarily dictate that a witness *Page 872 
should not be asked to refresh his recollection unless it is first shown that he needs the aid of a refreshing memorandum of some sort in order to recall the facts to his mind. State v. Weiss, Mo.App., 185 S.W.2d 53; 70 C.J. 582; 58 Am.Jur., Witnesses, sec. 580. It consequently follows, therefore, that where a witness has testified positively and readily so as to indicate that his memory is not obscured, one may not be permitted, in the guise and on the pretext of refreshing the witness' recollection, to make use of a favorable memorandum with an actual view to contradicting the witness or inducing him to change his testimony. Clymer v. Kansas City Rys. Co., Mo.App., 214 S.W. 423; 70 C.J. 582.
[10] The police officer testifying for plaintiff was Officer Rubesa, and while defendant has abandoned its complaint regarding the propriety of permitting Officer Rubesa to refresh his recollection by consulting the police report, the manner in which the report was brought into his examination is nevertheless of importance in so far as it discloses how the report was prepared and what it apparently contained with respect to the matter in controversy.
[11] Officer Rubesa testified that on the afternoon in question he was sent to investigate a report of a man having been injured at the particular location, and found plaintiff in the tavern at 304 Washington Avenue. One of the officers who had preceded him to the tavern had already summoned a patrol car, and upon his own arrival Officer Rubesa placed plaintiff in the car and had him taken to City Hospital as is customary in the case of persons found injured on the street. He left plaintiff in the charge of one of the doctors at the hospital, and obtained a diagnosis of his injuries, which he incorporated in the police report.
[12] Asked if he remembered what plaintiff had told him as to what had occurred, or whether he would care to see a copy of the police report, Officer Rubesa replied that he would like to see the report in order to refresh his recollection. Defendant's counsel objected upon the ground that the report did not purport to be that of Officer Rubesa himself, but was signed by the commanding officer of the district. It was then brought out that the commanding officer's name appears on all reports made out in his district, but that it had been Officer Rubesa who had furnished the information that had gone into the report. It is because of such latter disclosure that defendant has now abandoned its objection to the court's action in permitting Officer Rubesa to refer to the report.
[13] After reading over the report, Officer Rubesa testified that upon taking charge of plaintiff at the tavern he had obtained a brief account of what had allegedly taken place, which merely included the statement that plaintiff had been hit by a truck. In other words, so far as concerns whatever statements were made by plaintiff at the tavern in the presence and hearing of any police officers other than Officer Rubesa, it is significant that he did not purport to disclose the identity or ownership of the truck. However later, on the way to the hospital, he told Officer Rubesa that he thought it was a Columbia Terminals truck that had struck him, whereupon Officer Rubesa, acting on such information, inquired of defendant's claim agent whether any of its drivers, eight or ten of whom passed the point each day, had reported any such accident. No such report had been received, so that if the accident did occur, which defendant denied, the driver of the truck apparently had no knowledge of it.
[14] The two police officers testifying as defendant's witnesses were Officers Fedchak and Meyer.
[15] Officer Fedchak testified that at the time of the alleged accident he was detailed on strike duty at the southeast corner of Fourth Street and Washington Avenue, which was immediately across the street from the corner where plaintiff claims to have been injured. Officer Fedchak saw no accident, and the first he knew of the occurrence was when he was told that there was an injured man in a tavern at 304 Washington Avenue. Going over to the tavern to investigate, he found plaintiff, who informed him that he had been struck by a truck. However plaintiff did not recall where the accident had occurred or *Page 873 
what kind of a truck had struck him, and Officer Fedchak was positive that plaintiff had not said that he was hit by a Columbia Terminals truck.
[16] On cross-examination, after bringing out that it had been Officer Rubesa who had secured the information which was to go into the police report, plaintiff's counsel inquired whether police officers did not at least have some respect for the reports made out by a brother officer. Officer Fedchak answered that they did, and in fact subsequently testified that he had looked at the report a day or so previously, presumably in preparation for his testimony at the trial. Plaintiff's counsel then asked Officer Fedchak to read the portion of the report beginning with the second paragraph, and see whether it refreshed his memory "as to what the plaintiff said occurred and as to what truck of what company hit him." Over defendant's objection that Officer Fedchak had had no part in the preparation of the report, the witness was permitted to read it, and after doing so he stated that his memory was not refreshed. Thereupon plaintiff's counsel, obviously following the police report in so far as it purported to relate the details of the alleged accident, specifically inquired, among other things, whether plaintiff had said that "the truck bore the name of Columbia Terminals". Without waiting for the witness to answer, the court interposed to ask whether plaintiff had said any such thing, to which Officer Fedchak replied, "No, he did not."
[17] Officer Meyer testified that on the day in question he was assigned to duty as a traffic officer at the intersection of Fourth Street and Washington Avenue, but that at the time of the alleged accident he was not out in the street, but was standing on the southeast corner of the intersection, directly opposite the point where plaintiff claimed to have been struck. He testified that he first observed plaintiff as he approached the Fourth Street curb line and before he had ever stepped down off of the curb, and that he noticed that plaintiff was holding his handkerchief to his nose and was staggering in a zigzag manner. He further testified that plaintiff did not meet with an accident at Fourth Street and Washington Avenue, and that when he afterwards went to the tavern to investigate, plaintiff told him that he had been struck by a truck a block or so down the street, but did not know whose truck it had been.
[18] In view of the fact that Officer Meyer's testimony had been directly contrary to plaintiff's claim regarding what had occurred, plaintiff's counsel began his cross-examination by inquiring why Officer Meyer had not turned over his information to Officer Rubesa for incorporation in the police report, and had never at any time asked Officer Rubesa to correct his report. Counsel then likewise directed Officer Meyer's attention to the second paragraph of the report, which he asked him to read to see if it might refresh his memory. Defendant's counsel unavailingly objected, and after reading the report Officer Meyer announced that it did not refresh his memory. Later he testified that before coming to court he had gone to headquarters and had read the report as was his custom in cases where he was served with a subpoena to appear as a witness, and that it had refreshed his memory as to the time and location of the alleged accident. Asked if it had given him any idea of whose truck it was, Officer Meyer replied that at that time he knew that "they were talking about the Columbia Terminal truck", because he had received a subpoena from that company.
[19] Defendant has acted with commendable frankness in abandoning its complaint about the use of the police report in refreshing Officer Rubesa's recollection. While it is true that the report was signed, not by Officer Rubesa,. but by his commanding officer, it was none the less based upon the information he himself had supplied, and he was in a position to know (regardless of any question of the truth of what plaintiff had told him) that it was a correct recital of the result of his investigation at the time. Being of hazy memory by reason of the long lapse of time, he had expressed a desire to see the report, and after reading it he was then able to testify to his present, revived, and independent recollection of what he had learned in the performance of *Page 874 
the official duty with which he had been entrusted.
[20] But while defendant now admits the lack of error in permitting plaintiff's counsel to make use of the report in refreshing Officer Rubesa's recollection, it still insists, and we think correctly so, that it was error to extend counsel the same privilege in his cross-examination of Officers Fedchak and Meyer.
[21] The manner in which the report had been made up appeared from plaintiff's own evidence, and there was no dispute that neither Officer Fedchak nor Officer Meyer had had any part in the preparation of it. Even though Officer Fedchak had, "in a manner of speaking", given certain information to Officer Rubesa, nothing he had said had been incorporated in the report.
[22] Nor was the situation one where it appeared that either of the officers needed the aid of the police report in order to recall the facts to his mind. Both of them had testified positively and unequivocally that plaintiff, in his conversation with them, had disclaimed any knowledge of the ownership of the truck; and it is obvious, therefore, that while acting on the pretense of refreshing their respective recollections, it had been the actual intention of plaintiff's counsel to discredit their testimony, in so far as he might, by conveying the impression to the jury that their own account of the occurrence was at odds with what appeared in the police report. This, too, notwithstanding the fact that according to Officer Rubesa's own testimony, plaintiff's identification of the truck as one belonging to Columbia Terminals Company had been made to Officer Rubesa alone on the way to the hospital, and not in the presence and hearing of either Officer Fedchak or Officer Meyer.
[23] The police report was hearsay in character, James v. LaMear, Mo.App., 189 S.W.2d 131, and to confront the two officers with it after they had testified definitely and clearly to their own recollection of the event could have been calculated to serve no other purpose than to impair their credibility in the eyes of the jury with respect to the very core of the controversy that is, whether it had been one of defendant's trucks that had brought about plaintiff's injury, or whether such a claim was an afterthought on plaintiff's part after he had first professed ignorance of whose truck it had been. Refreshing the memory of a witness is not impeaching or contradicting him (70 C.J. 578); and the action of the court in allowing plaintiff's counsel to go through the pretense of refreshing the memories of Officers Fedchak and Meyer was an abuse of discretion which amounted to prejudicial error under the circumstances of the case.
[24] It follows that the judgment rendered by the circuit court should be reversed and the cause remanded; and the Commissioner so recommends.