STATE, ex rel., Susan C. PINI, Shirley A. Ball, Nellie E. Beel, Victoria L. Schroeder, Ralph J. Klocker, Charles M. Chastain, Karen S. Geers, Michael J. Reid, Marianne Simpson, David R. Floyd, John P. Ryan, Joan E. Andrews, and Ann L. O'Brien, Petitioners,

v.

Edward MORELAND, Director of St. Louis County, Department of Justice Services, Respondent.

No. 49219.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 28, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 13, 1985.

Application to Transfer Denied
April 30, 1985.

Timothy J. Finnegan, David C. Drury, David O. Danis, Mark Belz, Timothy Belz, St. Louis, for petitioners.

Richard S. Bender, Perry B. Newman, Rosenblum, Goldenhersh, Silverstein & Zafft, Clayton, for respondent.

DOWD, Presiding Judge.

This is an original proceeding in habeas corpus in which thirteen petitioners are testing the legality of their detention by the Director of St. Louis County Department of Justice Services. The petitioners allege various violations of their legal, procedural, and constitutional rights. The petitioners were all found guilty of indirect criminal contempt and all sentenced to confinement and fines in various terms and amounts as a result of their activities with the Roitman and Palmer Women's Clinical Group, Inc., a medical corporation providing obstetric and gynecological services. The activities occurred on three Fridays in September, 1984. We have jurisdiction. Mo. Const. Art V, § 4.

This case presents an issue of unusual importance and delicacy requiring a balance between persons who have firm beliefs in their views on abortion and the law of the land which must be upheld for the welfare of society, including the petitioners.

All of the petitioners were cited for contempt of court by the Circuit Court of St. Louis County for violating its temporary restraining order issued September 11, 1984, directed against John P. Ryan, et al., and which stated as follows:

1. The named Defendants and their officers, agents, servants, employees and attorneys and those persons in active concert or participation with them who receive actual notice of the order or otherwise, are temporarily restrained and enjoined from obstructing, barricading, blockading or interferring with ingress to and egress from Plaintiff's office suite known as Suite 111, and the building located at 3394 McKelvey Avenue, St. Louis County, Missouri.

2. Nothing shall be construed to restrain Defendants or any other persons from peacefully picketing, provided they do not obstruct or interfere with ingress to and egress from Plaintiff's office suite or the building located at 3394 McKelvey Avenue, St. Louis County, Missouri.

3. This restraining order is being issued to avoid continual and repeated trespasses and blocking ingress to and egress from Plaintiff's office suite and the building at 3394 McKelvey Avenue, St. Louis County, Missouri.

This order shall remain in effect, for good cause shown until October 1, 1984, or unless further order of Court extending this order is issued.

The court order was violated on the following three Fridays: September 14, 21, and 28, 1984. The contempt charges were initiated and prosecuted by an attorney for the clinical group. The petitioners were tried, convicted, and sentenced on charges of indirect criminal contempt stemming from the incidents occurring on those Fridays in September. The petitioners offered no evidence at the hearing. From the trial court's judgment, we summarize its actual findings:

| Defendants | Date of Violation | Sentence |
|---|---|---|
| Joan E. Andrews | 9/21, 28/84 | 20 days and $100 |
| Shirley A. Ball | 9/14/84 | 10 days and $100 |
| Nellie C. Beil | 9/21/84 | 5 days and $100 |
| Charles W. Chastain | 9/14/84 | 10 days and $100 |
| David R. Floyd | 9/14/84 | 3 months and $500 |
| Karen S. Geers | 9/21/84 | 5 days and $100 |
| Ralph J. Klocker | 9/14/84 | 10 days and $100 |
| Ann Lamb O'Brien | 9/14/84 | 30 days and $300 |
| Susan C. Pini | 9/14/84 | 10 days and $100 |
| Michael J. Reid | 9/14/84 | 30 days and $300 |
| John P. Ryan | 9/14/84 | 5 months and $500 |
| Marianne Simpson | 9/21/84 | 5 days and $100 |
| Victoria L. Schroeder | 9/21/84 | 5 days and $100 |

On October 3, 1984, the Circuit Court issued its judgment finding petitioners guilty as set out above. A petition for a writ of habeas corpus was filed on behalf of petitioners on October 4, 1984. This court issued its writ on that day and provided for petitioners release on bond pending the resolution of this writ. All of the petitioners except one has either served their sentences or have been released on bond.

Indirect criminal contempt has been defined as conduct outside of the presence of the contemned court in violation of the dignity of the court and in derogation of its decree. *Ryan v. Moreland,* 653 S.W.2d 244, 247 (Mo.App.1983); *Mechanic v. Gruensfelder,* 461 S.W.2d 298, 304–305 (Mo. App.1970). This case fits this definition. As this court stated in *Ryan v. Moreland, supra* 653 S.W.2d 247: "Although, 'a proceeding for criminal contempt is sui generis, and as such is controlled by its own rules...' one charged with criminal contempt is entitled to essentially the same rights of procedural due process as a defendant in a criminal case" citing *Mechanic v. Gruensfelder, supra* 461 S.W.2d 309.

Under Missouri law to sustain a finding of criminal contempt the guilt of the accused must be proven beyond a reasonable doubt. *Curtis v. Tozer,* 374 S.W.2d 557, 581 (Mo.App.1964). Furthermore, the most basic requirement of the trial of an accused is that he be shown to be that person who committed the offense. *State v. Parker,* 458 S.W.2d 241, 243 (Mo. 1970); *State v. Murphy,* 508 S.W.2d 269, 274 (Mo.App.1974).

Being cognizant of these legal principles, we examine the record to determine whether the prosecution proved its case against petitioners beyond a reasonable doubt and examine the contentions raised by petitioners. In their petition for habeas corpus relief, the petitioners raise a multitude of contentions. However, we need not detail each and every issue raised. After a thorough and careful reading of the record, we are convinced that there are numerous procedural flaws in the hearing which precludes us from upholding the judgments of contempt of these petitioners. We shall detail only two which are of a more serious nature.

The prosecution attempted to prove its case by the use of police reports under the Uniform Business Records as Evidence Law. §§ 490.660–490.690 RSMo 1978. This law is intended merely to enlarge the operation of the common law rule providing for the admission of business records as an

exception to the hearsay rule. *State v. Taylor*, 486 S.W.2d 239, 242 (Mo.1972). The statute is not to be considered as authorizing the police officer to read his report as a substitute for direct testimony where he has witnessed the act. However, this does not prohibit the use of a police report to refresh the recollection of the witness.

First, much of the "evidence" against the petitioners consisted of reading from certain police reports—exhibits 8, 9, and 10, relating to the various September, 1984 incidents at the clinic. Exhibit 9, prepared by Officer Ruth Zobrist, a Bridgeton police officer, was attempted to be qualified as a business record under § 490.680, RSMo 1978, and which was objected to as violating the petitioners' rights to confrontation under the federal and state constitutions. The officer read from exhibit 9, which was admitted into evidence, the names of certain petitioners arrested on September 21, 1984. She testified that she was present at the scene on September 21, 1984, and saw several persons picketing, and others standing near the south-east doorway. She assisted in making arrests but did not arrest all of the protestors. Other evidence of violations was based on the two other police reports, exhibit 8 & 10, but the record does not indicate by whom exhibit 10 was prepared. These exhibits allegedly showed violations on September 28 and 14, 1984, respectively. Moreover, exhibit 10 was never introduced in evidence. However, the record indicates that one officer testified extensively from the non-admitted exhibit 10.

■ There is no question that a witness, while testifying, may refresh his recollection by a writing or report prepared by the witness or known by him to be correct. *State v. Patton*, 255 Mo. 245, 164 S.W. 223 (1914); *Watson v. Meredith Development Company*, 410 S.W.2d 338 (Mo.App.1966). The foundation for use of a report to refresh recollection is that the witness must exhibit both a lack of present memory and the need for the aid of the writing for recall, before being allowed to refer to the writing. See *Griffith v. San Francisco Railroad Co.*, 559 S.W.2d 278, 281 (Mo. App.1977). The record is completely devoid of this foundation. Furthermore, the witness may only use the report to refresh his recollection. *Watson v. Meredith Development Company, supra* 410 S.W.2d at 341. It was therefore error here to permit over objection the use of the police reports in an attempt to establish the identity of petitioners as violators of the court order.

■ After holding that the proof of identity by the use of the police reports was fatally defective, we note that the only other attempt at identification occurred when Police Lieutenant Woodland was asked if he would be able to identify any of the violators. He answered, "A couple of them, if I could see them." The petitioners were seated in the jury box in plain view of the officer. However, the identification was not pursued further.

Second, a thorough examination of the record demonstrates a lack of clear and positive evidence that the petitioners violated the court order by "obstructing, barricading, blockading or interferring with ingress to and egress from" the clinic and that the petitioners were identified as the persons who were arrested on those three occasions in September. In short, there was no clear chain showing proper identification that the petitioners were the persons who violated the order and the persons who were arrested at the scene. As such there was a failure of identifying proof.

Lastly, while contempt of court is a very serious charge and is an integral part of our orderly system of justice, one of our most cherished rights and "the most basic requirement of a trial is that [the accused] be shown to be that person who committed the offense." *State v. Parker, supra* 458 S.W.2d at 243. While the law must be upheld to prevent violations of court orders and no one can be permitted to ignore or flaunt judicial pronouncements, lawful and legal procedures must be strictly followed before any American is deprived of liberty. As Justice Frankfurter once said "The his-

tory of American Freedom is in no small part a history of proper procedures."

With this opinion, the Court urges the petitioners to consider the consequences of their actions in the future. Further violations of court orders will undoubtedly result in further charges, which this court, when procedures are properly followed, is prepared to enforce.

The petitioners are discharged.

SIMON and PUDLOWSKI, JJ., concur.