Michael Joseph GABY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 79A02–1006–CR–804.

Court of Appeals of Indiana.

June 7, 2011.

Mark S. Fryman, Jr., Starr Austen & Miller, LLP, Logansport, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Joby D. Jerrells, Deputy Attor-

ney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

MATHIAS, Judge.

Michael Joseph Gaby ("Gaby") was convicted in Tippecanoe Superior Court of Class A felony child molesting. Gaby appeals and presents three issues for our review, which we renumber and restate as:

I. Whether the trial court erred in allowing the State to amend the charging information;

II. Whether the trial court abused its discretion in permitting the State to refresh the recollection of the victim when the victim did not evidence a lack of recollection;

III. Whether the State's arguments constituted prosecutorial misconduct; and

IV. Whether the trial court erred in ordering Gaby to serve his sentence as a credit restricted felon.

We reverse Gaby's conviction and remand for retrial.

**Facts and Procedural History**

Sometime in 1995 or 1996, P.C. and her four daughters lived in the same apartment complex as did Gaby and his daughter. Gaby's daughter was approximately the same age as P.C.'s daughter M.C., who was born in 1993. On one occasion, P.C. asked Gaby to watch M.C. for the day while she went to work. Only Gaby and M.C. were in the apartment. Gaby told M.C. to try on some clothes that his daughter had outgrown, and M.C. undressed. Gaby told M.C. to sit down, then put a blanket over her and inserted his fingers into her vagina. After this incident, M.C. did not go to Gaby's apartment alone. Gaby and his daughter moved out

of the apartment complex when M.C. was between the second and third grade.[1]

Several years later, Gaby asked P.C. to drive him and his daughter to church. When an opportunity arose that day, Gaby asked M.C. if she had ever told anyone about what he had done to her. She told Gaby that she had not. Years later, on April 20, 2009, when M.C. was approximately fifteen years old, she told her teacher what Gaby had done to her. M.C.'s teacher contacted the police, who interviewed her.

On May 6, 2009, Lafayette Police Detective Joseph Clyde interviewed Gaby. Gaby initially denied ever having been alone with M.C., but later claimed that he had been alone with the child once when she had thrown up on her clothes. Gaby claimed, however, that he had not helped M.C. change her clothes. Gaby then admitted that he did help M.C. change her clothes and may have unintentionally fondled her. The next day, Gaby spoke with Detective Scott Galloway and denied having inserted his finger into M.C.'s vagina. Gaby did ask, however, if the police could "help him remember if he had molested [M.C.]" Tr. p. 183.

On June 10, 2009, the State charged Gaby with Class A felony child molesting. The State moved to amend the charging information on March 29, 2010, and Gaby filed an objection thereto the following day. On March 31, 2010, the trial court granted the State's motion to amend. A two-day jury trial commenced on April 6, 2010, at the conclusion of which the jury found Gaby guilty as charged. At a sentencing hearing held on May 26, 2010, the trial court sentenced Gaby to twenty years and ordered him to serve his sentence as a

---

1. M.C. had to repeat the second grade.

credit restricted felon. Gaby now appeals.[2]

## I. Charging Information

Gaby first claims that the trial court erred in allowing the State to amend the charging information a week before trial.[3] The original charging information, filed on July 10, 2009, alleged that Gaby molested M.C. on one occasion between 1997 and 1998 when M.C. was ten to eleven years old. This was impossible, as M.C. was born in 1993 and would have been between four and five years old at that time. The State filed a motion to amend the charging information on March 29, 2010, seven days before the scheduled trial date. The State's proposed amended charging information changed the alleged date range of the molestation to 1997 to 2002, when M.C. was between four and eight years old. Gaby objected to the proposed amendment, but the trial court granted the State's motion to amend, concluding:

> The Court ... finds that the Amended Information does not prevent the defendant from presenting a defense, because the specific occasion is one where the defendant was babysitting for the complaining witness, after which the complaining witness never returned to the defendant's apartment alone. While the date range is broad, the details of the occasion in question are not.

Appellant's App. p. 11.

### A. *Amendment of the Charging Information*

In general, Indiana Code section 35-34-1-5(b) permits the State to amend a charging information even in matters of substance at any time before the commencement of trial so long as the amendment does not prejudice the defendant's substantial rights. *See Brown v. State,* 912 N.E.2d 881, 890 (Ind.Ct.App.2009), *trans. denied.* The "substantial rights" of a defendant include a right to sufficient notice and an opportunity to be heard regarding the charge. *Id.* " 'Ultimately, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges.' " *Id.* (quoting *Sides v. State,* 693 N.E.2d 1310, 1313 (Ind. 1998), *abrogated on other grounds by Fajardo v. State,* 859 N.E.2d 1201 (Ind.2007)). The substantial rights of the defendant are not prejudiced if: (1) a defense under the original information would be equally available after the amendment, and (2) the defendant's evidence would apply equally to the information in either form. *Id.* Our supreme court has also explained that "an amendment is of substance only if it is essential to making a valid charge of the crime." *McIntyre v. State,* 717 N.E.2d 114, 125–26 (Ind.1999); *accord Brown,* 912 N.E.2d at 890.

We first observe that there is no indication that Gaby requested a continuance after the trial court granted the State's motion to amend. The failure to request a continuance after the trial court allows a pre-trial substantive amendment to the charging information over defendant's objection results in waiver of the issue on appeal. *Wilson v. State,* 931 N.E.2d 914, 918 (Ind.Ct.App.2010), *trans.*

---

**2.** Gaby's statement of facts is rife with argument, which is inappropriate in an appellate brief. *See Nicholson v. State,* 768 N.E.2d 1043, 1045 n. 2 (Ind.Ct.App.2002). The statement of facts should be a concise narrative of the facts stated in the light most favorable to the judgment and should not be argumentative. *Id.;* Ind. Appellate Rule 46(A)(6).

**3.** As explained *infra,* we reverse Gaby's conviction based upon evidentiary error. We address Gaby's argument regarding the amended charging information because this could still be an issue on remand.

*denied.* As such, Gaby's argument regarding the amendment of the charging information is waived. Waiver notwithstanding, Gaby would still not prevail.

Gaby claims that his defense strategy was to argue that M.C.'s accusations should be particularly scrutinized because she was only three years old at the time and could not accurately remember the events. He further claims that, under the amended information, the State was able to argue that M.C. could have been several years older than even she remembered. This, Gaby claims, "foreclosed" his defense. We disagree. Even under the amended information, Gaby was able to argue that M.C. was, as she testified, only three years old at the time of the molestation and that her recollection of events at that time should therefore be suspect. The amended information did not deprive Gaby of this defense. Moreover, the State could have argued that M.C. was five years old, and not three years old as she testified even under the original information. In other words, this defense was not foreclosed by the amended information. Thus, even if Gaby had properly preserved this issue for appeal, he would not prevail.

### B.  *Specificity of the Amendment*

█ Gaby also claims that the amended charging information was not specific enough to give him sufficient notice of the allegations. The State responds by arguing that Gaby waived this argument by failing to challenge the sufficiency of the charging information by way of a motion to dismiss prior to arraignment. *See Vaillancourt v. State,* 695 N.E.2d 606, 610 (Ind.Ct.App.1998) ("The proper time for raising the insufficiency of the charging information is prior to arraignment."). Here, however, Gaby's claim goes to the sufficiency of the *amended* charging information, which was amended only seven

days before trial. Gaby could not have moved to dismiss this amended information before arraignment, and we decline to hold that his failure to do so waived appellate consideration of his argument.

Gaby did file a motion to dismiss and a motion for a more definite statement on August 20, 2009. But this was before the State amended the charging information. And Gaby did not include a copy of these motions, or the trial court's rulings thereon, in his appendix. Still, Gaby should have filed a motion to dismiss after the State amended the charging information. This is especially true where Gaby's complaint is directed at the charging information as amended. This would have given the trial court the opportunity to rule on the issue before the case was brought to trial. *See GKC Ind. Theatres, Inc. v. Elk Retail Invs., LLC.,* 764 N.E.2d 647, 651 (Ind.Ct.App.2002) (noting that the waiver rule protects the integrity of the trial court because it cannot be found to have erred as to an issue that it never had an opportunity to consider). Again, however, even if we were to conclude that Gaby did not waive his appellate argument, he would not prevail on the merits.

The contents of a charging information are governed by Indiana Code section 35–34–1–2 (2004 & Supp.2005), which provides in relevant part:

(a) The indictment or information shall be in writing and allege the commission of an offense by:

&ast;  &ast;  &ast;

(5) stating the date of the offense with sufficient particularity to show that the offense was committed within the period of limitations applicable to that offense;

(6) stating the time of the offense as definitely as can be done if time is of the essence of the offense[.]

As explained in *Garner v. State*, 754 N.E.2d 984, 990 (Ind.Ct.App.2001), *summarily aff'd in relevant part*, 777 N.E.2d 721 (Ind.2002), "[a]n information that enables 'the accused, the court, and the jury to determine the crime for which conviction is sought' satisfies due process." Indiana courts have consistently held that where time is not of the essence of the offense, it is sufficient to allege time specifically enough to establish that the offense was committed within the period of limitations. *Id.* It is also well settled that time is *not* of the essence in the crime of child molesting. *Id.* (citing *Barger v. State*, 587 N.E.2d 1304, 1307 (Ind.1992)). This is so because "it is difficult for children to remember specific dates, particularly when the incident is not immediately reported as is often the situation in child molesting cases." *Id.* (quoting *Barger*, 587 N.E.2d at 1307). The exact date becomes important only in limited circumstances, such as when the victim's age at the time of the offense falls at or near the dividing line between classes of felonies. *Id.* (citing *Barger*, 587 N.E.2d at 1307).

Here, it is undisputed that M.C.'s age at the time of the offense was not near any such dividing line. Thus, the only requirement is that the charging information allege that the offense was committed within the statutory period of limitations. *See id.* There is no applicable statute of limitations for Class A felony child molesting. Ind.Code § 35–41–4–2(c) (2004) ("A prosecution for a Class A felony may be commenced at any time.").[4] The amended charging information was therefore sufficient. *See Hodges v. State*, 524 N.E.2d

774 (Ind.1988) (rejecting defendant's claim that charging information was insufficient where it alleged that defendant had committed child molesting during a twenty-five month period); *Buzzard v. State*, 712 N.E.2d 547, 551–52 (Ind.Ct.App.1999) (rejecting defendant's claim that information charging him with child molesting was insufficient where it alleged that the charged events took place over one and one-half years); *Jones v. State*, 581 N.E.2d 1256, 1257 (Ind.Ct.App.1991) (rejecting defendant's claim that information charging child molesting during a two-year period was too general to allow alibi defense), *abrogated on other grounds by Steward v. State*, 652 N.E.2d 490 (Ind.1995); *Merry v. State*, 166 Ind.App. 199, 210, 335 N.E.2d 249, 256–57 (1975) (rejecting defendant's claim that information alleging child molesting within a three-year period was too broad).

Although none of the above-cited cases involved a period of five years, as alleged in the charging information at issue here, the information charging Gaby alleged only one incident. Thus, there was no question about which incident was alleged. *Cf. Ross v. State*, 172 Ind.App. 484, 487–88, 360 N.E.2d 1015, 1018 (1977) (rejecting defendant's attack on specificity of information charging dealing in marijuana because only one delivery was alleged but recognizing that if multiple deliveries had been made, defendant might have difficulty in determining the specific crime for which conviction was sought).[5] We therefore reject Gaby's claim that the charging information was too broad or general to

---

4. A prosecution for child molesting of any felony level may be commenced any time before the date the alleged victim of the offense reaches thirty-one years of age. I.C. § 35–41–4–2(e)(1).

5. As to Gaby's reference to possible double jeopardy concerns, "it is the record, not just the indictment or the information, which provides protection from subsequent prosecutions for the same offense." *Garner*, 754 N.E.2d at 991 (citing *Buzzard*, 712 N.E.2d at 551–52).

give him sufficient notice of the allegations against him.

## II. Refreshed Recollection

Gaby argues that the trial court abused its discretion when it permitted the State to refresh M.C.'s recollection using the transcript of a previous interview. In addressing this argument, we are mindful that decisions regarding the admission of evidence are within the sound discretion of the trial court, and we will not reverse the trial court's decision absent a showing of a manifest abuse of that discretion resulting in the denial of a fair trial. *Williams v. State*, 782 N.E.2d 1039, 1045 (Ind.Ct.App. 2003). The trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* Where a trial court's evidentiary ruling involves the interpretation of a rule of evidence, we apply a *de novo* standard of review. *Tyler v. State*, 903 N.E.2d 463, 467 n. 4 (Ind. 2009).

Indiana Evidence Rule 612(a) provides, "[i]f, while testifying, a witness uses a writing or object to refresh the witness's memory, an adverse party is entitled to have the writing or object produced at the trial, hearing, or deposition in which the witness is testifying." Our supreme court has explained that "[a]lthough Evidence Rule 612(a) clearly envisions the use of writings to refresh a witness's memory, it 'does not address the method by which the witness's memory may be refreshed.'" *Thompson v. State*, 728 N.E.2d 155, 160 (Ind.2000) (quoting 13 Robert Lowell Miller, Jr., Indiana Practice § 612.101, at 225 (2d ed.1995)). The court in *Thompson* "agree[d] with Judge Miller that a 'simple colloquy' is all that is required under Rule 612." *Id.*

*The witness must first state that he does not recall the information sought by the questioner. The witness should be directed to examine the writing, and be asked whether that examination has refreshed his memory. If the witness answers negatively, the examiner must find another route to extracting the testimony or cease the line of questioning.*

*Id.* (quoting Miller, § 612.101, at 226) (emphasis added).

At Gaby's trial, the following colloquy occurred between the prosecutor and M.C.:

Q. What happened when you went over to [Gaby]? You're just now wearing a shirt, no pants, no underwear?

A. He made me sit down and he put a blanket and fingered me.

Q. Say again?

A. He fingered me.

Q. What do you mean by he fingered you?

A. He put his fingers inside of my vagina.

Q. Okay, how do you know that? As a little kid how did you know that's what happened?

A. Because I remember.

Q. Okay. Do you have a memory of how it felt?

A. Not good.

Q. Okay.

A. Not comfortable.

Q. Okay. How did you know his fingers actually went inside as opposed to staying outside and touching the outside?

A. Because I remember very well.

Q. Okay, no doubt?

A. No doubt.

Q. *Okay. Did he say anything to you when he put his fingers in your vagina?*

A. *No.*

Q. *Okay, was he making any sounds or noises or anything while he was doing this?*

A. *No.*

Q. Okay, did he say anything afterwards?

A. He just told me to get dressed.

Q. Okay. Did he ever explain to you or — what he was doing or why he was doing this?

A. No.

Q. *Okay. Did you [sic] touch you anywhere else besides your vagina?*

A. *No.*

Q. *Okay. Ever touch your bottom, your chest, anything like that?*

A. *No.*

Q. *Okay. Did you ever see his genitals, his private parts?*

A. *No.*

Q. *Okay. Did he ever have you touch his private parts?*

A. *No.*

Q. Okay. So this one time that you can remember you can remember him touching your vagina with his fingers inside?

A. Yes.

Q. Okay. Let me jump ahead for a second. Do you remember when— this time last year, April of '09 when you finally told what he had done many, many years ago and you were interviewed at a special house called Hartford House, do you remember that?

A. Yes.

Q. Okay. And do you remember seeing a copy of your statement, of your interview?

A. Yes.

Q. Okay. Did I in fact give you a copy?

A. Yes, ma'am.

Q. If I showed you a copy of that do you think that would refresh your memory as to some of these questions I just asked?

A. Yes.

Tr. pp. 43–46 (emphases added).

At this point, Gaby's counsel objected, arguing that M.C. had not shown a lack of recollection and that refreshing her recollection was therefore inappropriate. The trial court overruled this objection.[6] After M.C. had reviewed her previous statement, the State then continued to question her as follows:

Q. Okay. Did reading through your transcript of your interview today refresh your memory or help you remember what you had told the interviewer last year?

A. Yes.

Q. Okay. Did he ever say anything when he was doing that to you with his hands?

     \*       \*       \*

A. He like — he said like — asked if it felt good and stuff. No.

Q. Okay. Did he touch you anywhere else at that time?

A. (indiscernible)

Q. Okay, remember what you read in your interview?

A. Yeah, like he — like he touched my chest.

     \*       \*       \*

A. But like it was just like a touch.

Q. Okay. And do you remember him ever having you touch his private parts?

A. No.

---

**6.** The trial court explained at a subsequent sidebar conference that the reason for its ruling on Gaby's objection was because "a party may impeach their own witness[.]" *Id.* at 47.

Q. Okay. Either outside his clothes or under his clothes either one?

A. No.

Q. Okay. I'll have you read your page twelve again and see if you understand my question. Okay. Was [Gaby] making any — saying anything to you other than does it feel good or you like it, which was it? I'm sorry.

A. Heavy breathing also.

Q. Okay. What do you mean by that?

A. Like breathing really heavy.

Q. Okay, breathing that was not normal?

A. [affirmative response].

Q. Okay. And did he ever expose himself to you I think was one of the questions?

A. No.

Q. Okay, but did he ever have you touch himself?

A. Yes.

Q. What part of his body did he have you touch?

A. His penis.

Q. Okay. At that age did you know what that was?

A. No.

Tr. pp. 49–50.

■ We agree with Gaby that the transcript clearly shows that M.C. did not testify as to any lack of recollection regarding the events before the prosecutor showed her the transcript of her previous statement. M.C. simply gave answers the prosecutor neither expected nor desired. The prosecutor attempted to rectify this by having M.C. read the transcript of her previous statement, after which M.C. still struggled to give the prosecutor the desired answers.

We therefore conclude that there was no foundation for refreshing M.C.'s recollection because she did not state that she was unable to recall the information sought by the questioner. *See Thompson*, 728 N.E.2d at 160 (quoting Miller, § 612.101, at 226).[7] There was therefore no need for the State to "refresh" M.C.'s recollection. *See id.; see also People v. Shatner*, 174 Ill.2d 133, 220 Ill.Dec. 346, 673 N.E.2d 258, 267 (1996) ("it is fundamental that a witness' memory can be refreshed only after it has been established that the witness has no memory concerning the facts in question."); *Genna v. Jackson*, 286 Mich. App. 413, 781 N.W.2d 124, 131 (2009) (to lay proper foundation to refresh witness's recollection, proponent must first show that the witness's present memory is inadequate). We agree with the following statement of the Missouri Court of Appeals in *State v. McKinney*, 763 S.W.2d 702, 708 (Mo.Ct.App.1989):

[W]here a witness has testified positively and readily so as to indicate that his memory is not obscured, one may not be permitted, in the guise and on the pretext of refreshing the witness' recol-

7. We recognize that in *King v. State*, 260 Ind. 422, 425, 296 N.E.2d 113, 115 (1973), our supreme court held that if a witness, "merely because of the passage of time or possibly through the pressures and excitement of testifying inadvertently omitted certain crucial facts, the State would be well within its right to use the witness' prior statement to refresh his recollection." *See also Poore v. State*, 501 N.E.2d 1058, 1061 (Ind.1986) (citing *King* for the same proposition). These cases, however, directly conflict with our supreme court's later position in *Thompson* that before a witness's memory may be refreshed, "[t]he witness must first state that he *does not recall* the information sought by the questioner." 728 N.E.2d at 160 (emphasis added). We are bound by *Thompson*, which implicitly overruled the contrary position in *King* and *Poore*, both of which were decided before the adoption of the Indiana Rules of Evidence.

lection, to make use of a favorable memorandum with an actual view to contradicting the witness or inducing him to change his testimony.

*Id.* (citations and internal quotations omitted). This is precisely what the prosecutor did in the present case.

■ The State argues that the prosecutor's behavior was justified as impeachment, noting that, pursuant to Evidence Rule 607, a party may impeach its own witness. This argument rings hollow. The State had no motive to attack the credibility of M.C., who was the State's main witness. To the contrary, the State's entire case depended upon the credibility of M.C.'s testimony regarding an event that happened approximately twelve years ago when M.C. was approximately three years old.[8] It is clear that the prosecutor did not wish to impeach M.C.; she asked M.C. if reading the transcript of her previous statement would "refresh her memory," and asked again after she had read the transcript if doing so had "refresh[ed] her memory." Tr. pp. 46, 49. The State also referred to some of the "refreshed" recollections in its closing argument as substantive evidence, not for impeachment purposes. Specifically, the State referred to Gaby's "heavy breathing," a detail that M.C. described only after she had read the transcript of her earlier statement. Tr. pp. 192–93. Evidence admitted only for impeachment may not be used as substantive evidence. *See Humphrey v. State,* 680 N.E.2d 836, 840 (Ind.1997).

Under these facts and circumstances we are compelled to conclude that the trial court abused its discretion when it permitted the State to allow M.C. to read the transcript of her previous statement when M.C. had not testified that she could not recall the information sought by the prosecutor. *See McKinney,* 763 S.W.2d at 708 (concluding that trial court erred in permitting witness to use police report to "refresh" his recollection even though witness had testified "clearly and unhesitatingly" to events at issue).[9]

### III. Prosecutorial Misconduct

■ Gaby also claims that the prosecutor committed misconduct when she vouched for M.C.'s credibility. Specifically, the prosecutor stated that she was "confident" that the jury would "come to the same conclusion" that she and the police detectives had come to. Tr. p. 36. She also told the jury that "I cannot and would not bring charges that I believe were false." *Id.* at 210. She further told the jury that "I can tell you that with a guilty verdict on this case I will be able to sleep fine tonight. Just fine. In fact, better than fine. You will be able to also." *Id.* at 212.

■ It is inappropriate for a prosecutor to make an argument which takes the form of personally vouching for a witness. *Lainhart v. State,* 916 N.E.2d 924, 938 (Ind.Ct.App.2009) (citing *Schlomer v. State,* 580 N.E.2d 950, 957 (Ind.1991)). As set forth in the Rules of Professional Conduct:

A lawyer shall not … in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of

---

8. Gaby did make use of the "refreshed recollections" to impeach M.C.'s credibility by emphasizing the inconsistencies between her prior statement and her initial description of the events at trial.

9. Even if we were to conclude that this error was harmless by itself, we also conclude below that the prosecutor improperly vouched for M.C.'s credibility. As discussed below, the combination of these two errors requires reversal of Gaby's conviction.

facts in issue except when testifying as a witness, *or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of the accused* [.]

Ind. Professional Conduct Rule 3.4(e) (emphasis added). A prosecutor may comment on the credibility of the witnesses only if the assertions are based on reasons which arise from the evidence. *Lainhart,* 916 N.E.2d at 938 (citing *Cooper v. State,* 854 N.E.2d 831, 836 (Ind.2006)).

In *Lainhart,* the prosecutor told the jury during voir dire that "it would take an awful lot to get an officer [to lie]" and that "there's no place for it in our society." *Id.* And during closing arguments, the prosecutor said, "if any officer would even come close to not putting out exactly what happened telling the truth, they're out. I would never, ever, put them in front of a Jury, if I suspected anything." *Id.* On appeal, we held that the prosecutor's remarks were "improper indoctrination, vouching, and commentary on the justness of the cause." *Id.* Similarly, in *Schlomer,* our supreme court held that the prosecutor improperly vouched for a witness where he stated, "I believe Detective McGee when he tell[s] us what happened." 580 N.E.2d at 957.

The same is true here. The prosecutor's remarks constitute improper vouching for M.C.'s credibility, which as we noted above, was the central issue in this case. Although we recognize that the prosecutor's comments were in response to Gaby's argument that M.C.'s accusations were false, the prosecutor's response still crosses the line into improper vouching as her comments were not based solely on reasons which arose from the evidence, but rather, asserted a personal knowledge of the facts at issue.

## IV.   Harmless Error Analysis

■ Having concluded that M.C.'s recollection was improperly refreshed and that the prosecutor improperly vouched for M.C.'s credibility, we must now decide whether these errors require reversal of Gaby's conviction. Errors in the admission of evidence are to be disregarded as harmless unless they affect the defendant's substantial rights. *Rogers v. State,* 897 N.E.2d 955, 961 (Ind.Ct.App.2008) (citing Ind. Trial Rule 61; Ind. Evidence Rule 103(a)), *trans. denied.* An error will be deemed harmless if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties. Ind. Appellate Rule 66(A); *Rogers,* 897 N.E.2d at 961.

M.C.'s testimony prior to the State's improper use of her prior statement established that, while alone with Gaby, he made her undress, put her under a blanket, and inserted his finger into her vagina. This was sufficient to establish the State's *prima facie* case. *See Short v. State,* 564 N.E.2d 553, 559 (Ind.Ct.App. 1991) (defendant's intent to gratify sexual desires may be inferred from intentional touching of child victim's genital area). But the question before us is not whether the properly admitted evidence was sufficient to support the conviction. The question is whether the improperly admitted evidence had a probable impact on the jury that was sufficiently minor so as to not affect Gaby's substantial rights. *Rogers,* 897 N.E.2d at 961.

M.C.'s improperly refreshed testimony established that Gaby was breathing heavily, asked her if what he was doing felt good, touched her chest, and asked her to touch his penis. As noted above, the State even referred to the heavy breathing in its closing argument, highlighting the fact

that the State was relying on M.C.'s refreshed testimony as substantive evidence.

We must also consider the effect of the prosecutor's improper vouching. Standing on its own, the vouching would likely not rise to the level of reversible error.[10] *See Schlomer*, 580 N.E.2d at 957 (holding that prosecutor's improper vouching did not constitute reversible error where the prosecutor withdrew his opinion and the trial court admonished the jury to disregard the prosecutor's statement). However, when combined with the improper refreshing of M.C.'s recollection, we are unable to say that the cumulative effect of these errors was harmless. M.C.'s credibility was the central issue at trial. The prosecutor not only improperly "refreshed" M.C.'s recollections, eliciting further details of the molestation, she also vouched for M.C.'s credibility. Under these facts and circumstances, we are compelled to conclude that Gaby's conviction must be reversed. *See Lainhart*, 916 N.E.2d at 938–39 (holding that cumulative effect of several errors, including improper vouching, constituted reversible error).

■ The question now becomes whether Gaby may be retried. This depends upon a review of the sufficiency of the evidence. *Alexander v. State*, 819 N.E.2d 533, 539 (Ind.Ct.App.2004). When deciding whether retrial is permissible, we consider all of the admitted evidence, including any erroneously admitted evidence, to determine if that evidence viewed as a whole would have been sufficient to sustain the verdict. *Id.* at 540. If so, retrial does not offend double jeopardy principles. *Id.* If the evidence is insufficient, however, the defendant may not be retried. *Id.*

Here, the evidence presented by the State was sufficient to support Gaby's conviction. M.C. testified that Gaby told her to take off her pants and underwear, told her to get under a blanket, and inserted his finger into her vagina. This by itself was sufficient to support Gaby's conviction. *See Short*, 564 N.E.2d at 559. And M.C.'s improperly refreshed testimony further supported the conviction by demonstrating that Gaby asked her if what he was doing felt good, touched her chest, asked her to touch his penis, and was breathing heavily. Thus, there was sufficient evidence to support Gaby's conviction, and double jeopardy principles do not bar retrial. *See Alexander*, 819 N.E.2d at 539.

## V. Credit Restricted Felon

■ Lastly, Gaby claims that the trial court erred in ordering him to serve his sentence as a credit restricted felon. Pursuant to Indiana Code section 35–41–1–5.5 (2008), a "credit restricted felon" is defined to include a person who has been convicted of child molesting involving sexual intercourse or sexual deviate conduct if the offender is at least twenty-one years old and the victim is less than twelve years old. The credit restricted felon statute was effective on July 1, 2008 and applies "only to persons *convicted* after June 30, 2008." *Upton v. State*, 904 N.E.2d 700, 704 (Ind.Ct.App.2009), *trans. denied* (quoting Pub.L. 80–2008, Sec. 6) (emphasis added). "A person who is a credit restricted felon and who is imprisoned for a crime or imprisoned awaiting trial or sentencing is initially assigned to Class IV. A credit restricted felon may not be assigned to Class I or Class II." Ind.Code § 35–50–6–4(b) (2004). "A person assigned to Class IV earns one (1) day of credit time for every six (6) days the person is imprisoned for a crime or confined awaiting trial or sentencing." Ind.Code § 35–50–6–3(d) (2008).

---

**10.** This is especially true where, as here, the defendant made no objection to the prosecutor's statement and would therefore have to establish fundamental error.

Since Gaby was convicted in 2010, the statute would, by its own terms, apply to Gaby. However, in *Upton,* we concluded that retroactive application of the credit restricted felon statute to a defendant who committed an offense before the effective date of the statute was an *ex post facto* violation even though he was convicted after the effective date of the statute. *Id.* at 706. *Upton* relied on *Paul v. State,* 888 N.E.2d 818, 827 (Ind.Ct.App.2008), in which we concluded that the application of a statute limiting educational credit for educational degrees earned while incarcerated to a defendant who had committed his offense before the effective date of the statute constituted an *ex post facto* violation under the U.S. Constitution. *Paul* in turn relied on *Weaver v. Graham,* 450 U.S. 24, 33, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), wherein the United States Supreme Court held that the application of a statute which limited prior provisions for earning credit time for good behavior to a defendant who had committed his offense before the effective date of the limiting statute was an *ex post facto* violation. The Court came to this conclusion because the new statute lengthened the period that the defendant was required to spend in prison, constricted the opportunity for early release, and thereby made the punishment for a crime committed before the statute's enactment more onerous than it had been at the time of enactment. *Id.* at 35–36, 101 S.Ct. 960; *see also Miller v. Florida,* 482 U.S. 423, 433–34, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (holding that application of statute which increased presumptive sentencing range for sex offenders to defendant who committed his offense prior to effective date of statute was an *ex post facto* violation).

Based on this precedent, the State concedes that application of the credit restricted felon statute to Gaby would be an unconstitutional *ex post facto* violation because Gaby committed his offense prior to the effective date of the statute. Therefore, if Gaby is convicted after retrial, he cannot be sentenced as a credit restricted felon.

### Conclusion

The trial court did not err in permitting the State to amend the charging information, and the amended charging information is not overly broad. The trial court did, however, abuse its discretion in permitting the State to refresh the recollection of a witness who gave no indication that she did not recall the answers to the questions imposed. Further, the prosecutor improperly vouched for M.C.'s credibility. Under the facts and circumstances of this case, we are unable to say that the combined effect of these errors was harmless. Because there was sufficient evidence to support Gaby's conviction, retrial is not barred by double jeopardy, but if Gaby is convicted after retrial, he may not be sentenced as a credit restricted felon. Accordingly, we reverse Gaby's conviction and remand for proceedings consistent with this opinion.

Reversed and remanded.

KIRSCH, J., and VAIDIK, J., concur.