Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 26 2013, 5:38 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**RUTH JOHNSON**
**DEBORAH MARKISOHN**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

JAMES HANDY,                                  )
                                              )
    Appellant-Defendant,                      )
                                              )
        vs.                               )    No. 49A04-1303-CR-132
                                              )
STATE OF INDIANA,                             )
                                              )
    Appellee-Plaintiff.                       )

APPEAL FROM MARION SUPERIOR COURT
The Honorable Mark D. Stoner, Judge
Cause No. 49G06-1109-FA-63904

**November 26, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Following a jury trial, James Handy ("Handy") appeals his conviction for Class A felony child molesting.[1] He raises three issues that we restate as:

I. Whether the prosecutor engaged in misconduct by improperly vouching for the child witness;

II. Whether his thirty-five-year sentence with five years suspended and three years of sex offender probation is inappropriate in light of the nature of the offense and the character of the offender; and

III. Whether the abstract of judgment reflects an incorrect period of probation.

We affirm Handy's conviction and remand to correct the abstract of judgment.

## FACTS AND PROCEDURAL HISTORY[2]

In March 2009, Handy and his then-wife ("Mother") divorced, and Mother received sole physical custody of their only child, A.H. Handy exercised alternating weekend visitation, as well as visitation every Wednesday. The parties cooperated as necessary to adjust visitation dates and times. During the 2011 Labor Day weekend, Handy had parenting time with A.H. beginning the afternoon or evening of Friday September 2, overnight, and through the day on September 3. At that time, Handy was living with his girlfriend ("Girlfriend") and her teenage daughter ("B") in an apartment in Indianapolis.

---

[1] *See* Ind. Code § 35-42-4-3.

[2] The record on appeal in this case was prepared pursuant to the Indiana Supreme Court's "Order Establishing the Indiana Court Reporting Pilot Project for Exploring the Use of an Audio/Visual Record on Appeal[,]" issued on September 18, 2012, and effective on July 1, 2012. *See In Re Pilot Project For Audio/Visual Recordings In Lieu of Paper Transcripts In the Preparation of the Record and Briefing on Appeal*, 976 N.E.2d 1218 (Ind. 2012). We are grateful for the ongoing cooperation of the Honorable Mark D. Stoner of Marion Superior Court, the Marion County Public Defender Agency, and the Office of the Indiana Attorney General in the execution of this pilot project.

On Friday, September 2, at around 7:00 p.m., Mother met Girlfriend to drop off A.H. because Handy was still at work. A.H. had recently turned six years old. B was not at home that night, and A.H. slept in B's room, which she generally did during her visitations with Handy.

A.H. fell asleep on Friday night wearing her pajamas, which consisted of a tank top, shorts, and underwear. She was alone in B's room when she fell asleep. Girlfriend left for work Saturday morning sometime between 5:00 and 6:00 a.m. When A.H. woke up Saturday morning, she was still wearing her tank top but her shorts and underwear were down at her ankles. She was lying on her back with her knees bent. She testified that Handy was under her and that he was naked. She said he "was licking my privates," and that his mouth was touching her "pee pee and [] butt." A/V Recording of 2/11/13 at 3:51:29, 3:55:12.[3] Handy continued for approximately thirty seconds after she awoke. He stopped and left the room without speaking; A.H. pulled up her underwear and shorts.

At approximately 9:00 p.m. that night, Handy returned A.H. to Mother at her house. Mother testified that she and Handy talked amicably for fifteen to twenty minutes, and nothing seemed out of the ordinary. However, once he left, A.H. immediately told Mother that she needed to talk to her privately. Mother took A.H. to a room where they were alone, and A.H. told Mother about what had happened.

Mother initially took A.H. to the Greenwood Police Department, but because the incident occurred in Indianapolis, Greenwood police directed Mother to a Marion County

---

[3] Because there is no paper transcript, our citations reflect the location of the information on the A/V Recordings.

police department location. Because Mother was not familiar with Indianapolis or the Indianapolis Metropolitan Police Department ("IMPD") location, she arranged to meet with an IMPD officer at a restaurant. There, the IMPD officer spoke with Mother and A.H. about what had happened, and he provided Mother with brown paper bags in which she should place A.H.'s clothing that she wore home from Handy's apartment, as well as the pajamas and underwear that she slept in at his house.[4] Mother packaged the items of clothing in the paper bags, including a pink pair of underwear that A.H. had worn to bed, her tank top and shorts that were her pajamas, and a purple pair of underwear that she had worn home to Mother's house.

The State charged Handy with one count of Class A felony child molesting and two counts of Class C felony child molesting. At trial, a serologist with the Marion County Forensic Services Agency ("Crime Lab"), Sarah Klassen ("Klassen"), testified for the State, describing the tests she performed on the pairs of pink and purple underwear. The crotch area of the pink underwear tested positive for amylase, which is a component of saliva. This result "indicated" the presence of saliva on the pink underwear that A.H. wore to bed. A/V Recording of 2/12/13 at 8:53:50. The results of her testing for amylase on the purple underwear indicated amylase, but further testing was "amylase inconclusive for the presence of saliva." A/V Recording of 2/12/13 at 8:58:30. Klassen thereafter collected DNA from the underwear for further testing, in order to compare the DNA profiles to

_____

[4] A.H. did not keep clothes at Handy's residence. Rather, she took a suitcase with her each time she went to visit him. Mother always packed a plastic bag in the suitcase into which A.H. would place her worn items of clothing, so that upon A.H.'s return home, Mother would know what needed to be washed and what was unworn and still clean.

4

buccal swabs taken from A.H. and Handy. Specifically, Klassen collected swab samples and she cut samples of fabric from the underwear and transferred the samples to the DNA section of the Crime Lab.

Tonya Fishburn ("Fishburn"), a DNA analyst in the biology unit for the Crime Lab, analyzed the samples. As for the swab from the purple underwear, Fishburn testified that the DNA profile matched the profile of A.H., but that male DNA was also present. Because the amount of A.H.'s DNA profile masked the male DNA, Fishburn conducted further testing, called "Y-STR" testing, where only the Y chromosome is examined. A/V Recording of 2/12/13 at 9:29:35. The results were that Handy or his paternal lineage could not be excluded as the contributor. The swatch cut from the purple underwear contained insufficient DNA to perform Y-STR testing. As for the swab of the pink underwear, the DNA profile was a mixture of major and minor contributors. The DNA profile of the major contributor matched the DNA profile of Handy, "In the absence of an identical twin, he is the source of the male DNA profile obtained from that item to a reasonable degree of scientific certainty." A/V Recording of 2/12/13 at 9:34:38. As for the pink swatch of fabric, the DNA profile matched that of A.H., but it also indicated the presence of male DNA. The further Y-STR testing indicated that Handy's DNA profile matched the DNA obtained from the swatch.

A.H. also testified at trial, and during closing arguments, the prosecutor discussed A.H.'s testimony, reviewing the chronology of what she said to whom and when. The prosecutor remarked that A.H.'s story was consistent and she repeated it a number of times, first to her mother, then a Greenwood Police officer, then an IMPD detective. The

prosecutor's closing argument included remarks to the jury that "[A.H.] is credible," "she didn't make that up," that A.H. "was not lying" and "she told you the truth." A/V Recording of 2/12/13 at 10:21:18, 10:22:05, 10:23:09, 10:23:11, 10:23:26, 10:48:51. Handy did not object during the prosecutor's closing argument at any time.

The jury found Handy guilty of Class A felony child molesting and not guilty of the other two charges. At the conclusion of the sentencing hearing, the trial court sentenced Handy to thirty-five years of incarceration with five years suspended and placed him on sex offender probation for a period of three years. Handy now appeals.

## DISCUSSION AND DECISION

### I.  Prosecutorial Misconduct

Handy asserts that the prosecutor made multiple statements during closing argument that constitute misconduct, namely by impermissibly vouching for A.H. In reviewing a claim of prosecutorial misconduct, we determine (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected. *Neville v. State*, 976 N.E.2d 1252, 1258 (Ind. Ct. App. 2012), *trans. denied*. Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006). "The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct." *Neville*, 976 N.E.2d at 1258.

6

Generally, in order to properly preserve a claim of prosecutorial misconduct for appeal, a defendant must not only raise a contemporaneous objection, he must also request an admonishment and, if the admonishment is not given or is insufficient to cure the error, then he must request a mistrial. *Id.*; *Lainhart v. State*, 916 N.E.2d 924, 931 (Ind. Ct. App. 2009). Where a claim of prosecutorial misconduct has not been properly preserved, our standard for review is different from that of a properly preserved claim; specifically, the defendant must establish not only the grounds for the misconduct but also the additional grounds for fundamental error. *Cooper*, 854 N.E.2d at 835. Fundamental error is an extremely narrow exception to the contemporaneous objection rule. *Neville*, 976 N.E.2d at 1258. In order for prosecutorial misconduct to constitute fundamental error, the misconduct must constitute a clearly blatant violation of basic and elementary principles of due process, present an undeniable and substantial potential for harm, and make a fair trial impossible. *Id.* The gravity of the peril turns on the probable persuasive effect of the misconduct on the jury's decision, not on the degree of impropriety of the conduct. *Id.* In judging the propriety of a prosecutor's remarks, the court considers the statements in the context of the argument as a whole. *Lainhart*, 916 N.E.2d at 931. The fundamental error exception is only available in egregious circumstances. *Palilonis v. State*, 970 N.E.2d 713, 730 (Ind. Ct. App. 2012), *trans. denied*. Here, Handy concedes he did not object to the prosecutor's remarks, but contends they placed him in a position of grave peril thus justifying a new trial.

Handy is correct that it is inappropriate for the prosecutor to make an argument that takes the form of personally vouching for a witness. *Neville*, 976 N.E.2d at 1260; *Thomas*

7

*v. State*, 965 N.E.2d 70, 77 (Ind. Ct. App. 2012), *trans. denied*; *see also Gaby v. State,* 949 N.E.2d 870, 880-81 (Ind. Ct. App. 2011) (prosecutor's statements that "I cannot and would not bring charges that I believe were false" and "I can tell you that with a guilty verdict on this case I will be able to sleep fine tonight. Just fine. In fact, better than fine. You will be able to also" were improper vouching). Indiana Professional Conduct Rule 3.4(e) provides:

> A lawyer shall not ... in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of the accused....

However, a prosecutor may comment on the credibility of the witnesses if the assertions are based on reasons which arise from the evidence. *Neville*, 976 N.E.2d at 1260; *Thomas*, 965 N.E.2d at 77; *Gaby,* 949 N.E.2d at 881. In addition, an attorney may properly argue any logical or reasonable conclusions based on his or her own analysis of the evidence. *Neville*, 976 N.E.2d at 1260; *see also Turnbow v. State,* 637 N.E.2d 1329, 1334 (Ind. Ct. App. 1994) ("A prosecutor may also properly comment on the evidence presented to the jury and argue logical conclusions from that evidence."), *trans. denied*.

In this case, Handy concedes that it was not impermissible for the prosecutor to state that A.H. "was credible" or to point out to the jury that A.H. "had no reason or motivation to lie." *Appellant's Br.* at 9. We agree. The prosecutor's statement about credibility was presented in terms of it being a logical conclusion from the evidence that A.H. had told Mother immediately when she saw her, she was consistent in telling the series of events to at least two law enforcement officers thereafter, and her recitation at trial over a year later

remained consistent. Likewise, the prosecutor's comments that A.H. had no reason to lie stemmed from evidence that, per Mother's testimony, there was "no drama" about custody and that she and Handy had always been flexible and cooperative regarding visitation, and the relationships were amicable, with the prosecutor arguing the logical conclusion from this set of facts is that A.H. had no reason to lie. The prosecutor also noted that, although the evidence presented suggested that sometimes A.H. was bored at Handy's house during visitations, being bored was no justification to make up such an allegation, and A.H. simply had no reason to lie.

Handy takes issue with several other statements that the prosecutor made in closing argument, such as that A.H. "didn't make that up," "she was not lying," and "she told you the truth." A/V Recording of 2/12/13 at 10:23:09, 10:23:11, 10:23:26, 10:48:51. Handy maintains that these three comments "went beyond a fair commentary on the evidence[.]" *Appellant's Br.* at 10. With regard to the prosecutor's comment that A.H. "didn't make that up," we disagree with Handy and find that it was, in fact, the prosecutor's reasonable conclusion from the evidence. That is, the prosecutor observed that A.H. was a six-year-old child when this happened and, despite that six-year-old children normally do not know about oral sex, A.H. testified that her father licked her private parts; from this, the prosecutor reasoned, it can be inferred that A.H. "did not make that up." A/V Recording of 2/12/13 at 10:23:09. In contrast, we find that the other challenged statements, namely that A.H. "told you the truth" and "she was not lying," at least approached the line of improper vouching. We thus must determine whether the error was fundamental.

As stated, when we judge the propriety of a prosecutor's remarks, we consider the statements in the context of the argument as a whole and whether the comments had a probably persuasive effect on the jury's decision. *Neville*, 976 N.E.2d at 1258. We find that, on balance, the prosecutor's closing argument considered as a whole was not permeated with inappropriate statements, but rather was fair argument. Even assuming misconduct occurred in this case, Handy has not demonstrated that the harm or potential harm done by the prosecutor's comments was substantial or that he was placed in grave peril. A.H.'s testimony at trial, that her father had licked her private parts in her room as she slept while he was naked, was consistent with other statements that she had given to several different people over a year and a half prior. The serologist testified that the pink underwear that A.H. had worn to bed indicated the presence of saliva. The DNA analysis did not exclude Handy. We are not persuaded that the jury found Handy guilty of child molesting for any reason other than the evidence introduced at trial. Any harm done by the prosecutor's remarks in closing argument was not substantial, and any error did not result in denying Handy fundamental due process.

## II. Sentencing

Handy contends that his thirty-five year sentence is inappropriate and asks us to reduce it to the advisory thirty years. Ind. Code § 35-50-2-4 (sentence range for Class A felony is twenty to fifty years with the advisory being thirty). Article 7, Section 6 of the Indiana Constitution authorizes this court to independently review and revise a sentence imposed by the trial court. *Neville*, 976 N.E.2d at 1266. We may revise a sentence after careful review of the trial court's decision if we conclude that the sentence is inappropriate

based on the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). The reviewing court "must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Stewart v. State*, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). Further, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts . . . but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Neville*, 976 N.E.2d at 1266. Here, Handy argues that the thirty-five-year sentence was excessively harsh and that the nature of the offense and his character warrant an executed sentence of the advisory thirty years.

With regard to the nature of the offense, Handy asserts that this was a single, isolated incident rather than a recurring pattern of conduct. He also reminds us that there was no evidence of grooming or of A.H. being threatened or suffering physical injury. Under these circumstances, Handy asserts, "a sentence beyond the advisory thirty years" is inappropriate. *Appellant's Br*. at 14. We disagree. Handy is A.H.'s biological father, not a stranger or even a friend of the family. He maintained a major position of trust with A.H. She exercised frequent visitation with him including overnights at his home. At the sentencing hearing, the trial court received evidence that, although A.H. was receiving counseling, she was exhibiting toddler-like behavior. Handy has not established that the nature of the offense warrants a finding that his sentence is inappropriate.

11

Handy also urges us to find that his character supports the imposition of the advisory sentence. He asserts that his prior criminal history, consisting of the following misdemeanors: 1987 resisting law enforcement, 1991 disorderly conduct, 1992 operating while intoxicated, and 2006 driving while suspended, do not bear any relationship to the present felony sex offense. While we agree that his criminal history is not particularly egregious, we observe, as did the trial court, that Handy had alcohol abuse problems. Although a condition of his probation for the operating a vehicle while intoxicated conviction required him to be evaluated and complete treatment for alcohol issues, Handy continued to abuse alcohol. According to his presentence investigation statement, Handy was under the influence of alcohol at the time of the instant offense. His character does not warrant a revision of his thirty-five-year sentence with five years suspended. Under the facts before us, we are not persuaded that Handy's thirty-five-year sentence is inappropriate.

### III. Abstract of Judgment

Where an abstract of judgment varies from the trial court's in-court pronouncement of sentencing, an error exists which must be corrected. *Stott v. State*, 822 N.E.2d 176, 178 (Ind. Ct. App. 2005) (remand to correct abstract where it is not consistent with trial court's in-court pronouncement), *trans. denied*.

Here, Handy's abstract of judgment reflects that he was to be placed on probation for 1835 days, which is a period of five years. *Appellant's App*. at 24. However, the trial court sentenced Handy to a period of sex offender probation for a term of three years. A/V Recording of 03/01/13 at 11:03:31. Handy asks us to remand the case to the trial court for

correction, and the State concedes that Handy's request is appropriate. Accordingly, we affirm Handy's conviction, but remand to the trial court with instructions to correct the abstract of judgment to reflect the correct period of probation.

Affirmed and remanded.

MAY, J., and BRADFORD, J., concur.