## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 31 2015, 9:25 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Jeremy K. Nix
Matheny, Hahn, Denman & Nix, L.L.P.
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Loyd Allen Sands,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 31, 2015

Court of Appeals Case No.
35A04-1408-CR-364

Appeal from the
Huntington Circuit Court

The Honorable Thomas M. Hakes, Judge

Cause No. 35C01-1305-FA-97

**Kirsch, Judge.**

[1] Loyd Allen Sands was convicted, after a jury trial, of five counts of child molesting,[1] each as a Class A felony, one count of child molesting[2] as a Class C felony, and one count of sexual misconduct with a minor[3] as a Class B felony[4] and was given an aggregate sentence of eighty-five years with five years suspended. Sands raises the following restated issues on appeal:

> I. Whether the trial court abused its discretion in denying his motion to dismiss and/or motion for a more definite statement; and
>
> II. Whether Sands's sentence is inappropriate in light of the nature of the offense and the character of the offender.

[2] We affirm.

## Facts and Procedural History

[3] J.D.M. was born in November 1997. Sands is a former boyfriend of J.D.M.'s mother and the father of J.D.M.'s younger brother. For much of her childhood, J.D.M. believed that Sands was also her father. Even after learning that Sands was not her father, J.D.M. still considered him to be her parent because "he was the only dad [she] ever had." *Tr.* at 165. Beginning when she was approximately six years old and continuing until right before her fourteenth

---

[1] *See* Ind. Code § 35-42-4-3(a)(1).

[2] *See* Ind. Code § 35-42-4-3(b).

[3] *See* Ind. Code § 35-42-4-9(a)(1).

[4] We note that, effective July 1, 2014, a new version of each of these criminal statutes was enacted. Because Sands committed his crimes prior to July 1, 2014, we will apply the statutes in effect at the time he committed his crimes.

birthday, J.D.M. would regularly go with her younger brother during his visitations with Sands and stay at the house that Sands shared with his father in Andrews, Indiana. Initially, these visitations were every other week, but they became less frequent as J.D.M. got older.

[4] When J.D.M. was seven years old, Sands began molesting her. On each Friday of her visitations, after J.D.M. and her brother arrived, Sands would leave J.D.M.'s brother alone in the living room to play video games while Sands and J.D.M. went to a spare bedroom. While in the bedroom, either Sands or J.D.M. would remove J.D.M.'s clothing. Although in early visitations, Sands would only touch J.D.M. on the inside and outside of her vagina, as time progressed, they would engage in "sexual intercourse . . . and then oral sex." *Id*. at 188. J.D.M. stated that she understood sexual intercourse to be when Sands touched the inside of her vagina with his penis. *Id*. at 188-89. The oral sex would occur "near the end" of the encounters with J.D.M. performing oral sex on Sands, and Sands ejaculating in her mouth. *Id*. at 189. While in the bedroom, Sands would also touch J.D.M. on the inside and outside of her vagina with his hands, and J.D.M. would touch Sands's penis with her hands. Sands touched J.D.M.'s breasts and vagina with his mouth, including putting his tongue inside her vagina. These incidents occurred "every Friday" she visited. *Id*. at 192.

[5] Additionally, on the weekends J.D.M. would visit, Sands would wake her up in the middle of the night. During the visitations, J.D.M. and her brother slept on the couch, and Sands would sleep in a chair in the living room. Sands would

lean over where J.D.M. was sleeping and touch her vagina inside her clothing. After touching J.D.M. for a few minutes, Sands would have her go to the downstairs bathroom. In the bathroom, Sands would continue to touch J.D.M. inside of her vagina and would then have her perform oral sex on him, which always ended with Sands ejaculating in J.D.M.'s mouth. These encounters in the middle of the night would occur "[a]lmost every day" during her visitations with Sands. *Id.* at 207.

[6] In addition to the molestations that occurred at the house, J.D.M. performed oral sex on Sands on about twenty different occasions in a pickup truck when Sands would take her to the store with him. Sands would stop the truck near a river and make J.D.M. perform oral sex on him. These incidents happened throughout the time J.D.M. was seven to fourteen years old.

[7] On March 11, 2011, Sands purchased a trailer home in Andrews, Indiana. During one visitation after Sands had moved into the trailer, J.D.M. performed oral sex on Sands in his home. This encounter occurred approximately two weeks after J.D.M.'s fourteenth birthday in November 2011.

[8] Sands's molestation of J.D.M. became known in the spring of 2013 when J.D.M. told a classmate that she had been molested. The State charged Sands with five counts of Class A felony child molesting, one count of Class C felony child molesting, and one count of Class B felony sexual misconduct with a minor. Counts I through V, which included four counts of Class A felony child molesting and one count of C felony child molesting, alleged that "[o]n or

about November 28, 2004 through March 11, 2011" Sands engaged in acts of sexual intercourse, deviate sexual conduct, and "touching and fondling" with J.D.M. at the residence of Sands's father. *Appellant's App*. at 13-17. Count VI alleged that "[o]n or about November 28, 2011 through December 31, 2011" Sands engaged in deviate sexual conduct with J.D.M. at Sands's trailer. *Id*. at 18. Count VII alleged that "[o]n or about November 28, 2004 through March 11, 2011" Sands engaged in deviate sexual conduct with J.D.M. "in a truck driven by" Sands. *Id*. at 19. Attached to the charging information was a probable cause affidavit containing information from an interview with J.D.M., in which J.D.M. described acts by Sands that took place "every weekend" of her visitation beginning when "she was approximately 7 years old and . . . continu[ing] until approximately 2 weeks after her 14th birthday." *Id*. at 27.

[9] Before the trial, Sands filed a combined "Motion to Dismiss and/or Motion for More Definite Statement with Memorandum" ("the Motion"), contending that the alleged time frame of his acts contained in the charging information lacked sufficient specificity to allow him to adequately prepare a defense. The State filed a response to the Motion, and after a hearing was held, the trial court denied the Motion.

[10] A jury trial was held on May 13-15, 2014, at which J.D.M. testified that the molestations by Sands occurred during every visitation at her grandfather's house and had been happening since she was seven years old. *Tr*. at 173, 185, 207. She explained that she went along with Sands's sexual acts when she was younger because he told her it was "natural" to do "that with your dad" and

because he would bribe her with food and money. *Id.* at 209. As she got older, J.D.M. became "aggravated" and "resentful" about what Sands was doing to her, which caused her to avoid spending time with Sands and to carve the number seven on her thigh. *Id.* at 220, 222. At the conclusion of the trial, the jury found Sands guilty of all the charges.

[11] The trial court sentenced Sands to concurrent forty-year terms for each Class A felony child molesting conviction under Counts I through IV with five years suspended from each sentence. Sands was given a concurrent six-year sentence for his Class C felony child molesting conviction under Count V with two years suspended. The trial court sentenced Sands to a consecutive fifteen-year term for his Class B felony sexual misconduct with a minor conviction under Count VI and a consecutive thirty-year term for his Class A felony child molesting conviction under Count VII. Therefore, Sands received a total sentence of eighty-five years with five years suspended to probation for an aggregate sentence of eighty years executed in the Department of Correction. Sands now appeals.

## Discussion and Decision

## I. Motion to Dismiss

[12] Sands argues that the trial court abused its discretion when it denied the Motion. We review a trial court's denial of a motion to dismiss for an abuse of discretion. *Gilliland v. State*, 979 N.E.2d 1049, 1058 (Ind. Ct. App. 2012). An abuse of discretion occurs when the trial court's decision is clearly against the

logic and effect of the facts and circumstances or when the trial court has misinterpreted the law. *Id.*

[13]     Sands contends that the charging information for Counts I through V and VII alleged a broad time frame beginning in November 28, 2004 through March 11, 2011, which was a period of almost six and a half years. He alleges that this lengthy time period and lack of specificity in the charging information precluded him from investigating or preparing a defense, such as an alibi defense, because he would have to reconstruct every other weekend over a six-and-a-half-year period to do so. Sands further asserts that alleging such a broad time frame in the charging information allowed cumulative evidence to be presented to the jury, and the repeated allegations over the six-and-a-half-year time frame had the potential to prejudice the jury.

[14]     "The purpose of the charging information is to provide a defendant with notice of the crime of which he is charged so that he is able to prepare a defense." *Id.* at 1060. A charging information that enables the accused, the court, and the jury to determine the crime for which conviction is sought satisfies due process. *Gaby v. State*, 949 N.E.2d 870, 876 (Ind. Ct. App. 2011). "Indiana courts have consistently held that where time is not of the essence of the offense, it is sufficient to allege time specifically enough to establish that the offense was committed within the period of limitations." *Id.* It is also well settled that time is not of the essence in the crime of child molesting because "it is difficult for children to remember specific dates, particularly when the incident is not immediately reported as is often the situation in child molesting cases." *Id.*

(quoting *Barger v. State*, 587 N.E.2d 1304, 1307 (Ind.1992)). The exact date becomes important only in limited circumstances, such as when the victim's age at the time of the offense falls at or near the dividing line between classes of felonies. *Id.*

[15] In the present case, the charging information alleged that Sands molested J.D.M. over an almost six-and-a-half-year period of time prior to J.D.M. turning fourteen. In prior cases where the State charged broad date ranges in the charging information, Indiana courts have affirmed convictions for child molesting. *See Hodges v. State*, 524 N.E.2d 774, 779 (Ind. 1988) (finding sufficient specificity when charging information alleged defendant committed molestation during a twenty-five-month period); *Gaby*, 949 N.E.2d at 876 (finding charging information was sufficiently specific where alleged that a single act of molestation happened during a five-year period); *Jones v. State*, 581 N.E.2d 1256, 1259 (Ind. Ct. App. 1991) (finding sufficient specificity where charging information alleged that molestation occurred during a two-year period), *abrogated on other grounds by Steward v. State*, 652 N.E.2d 490 (Ind. 1995). Although Sands acknowledges this precedent, he asserts that the charging information in the present case alleged too lengthy a period of time to enable him to present a defense. In its response to the Motion, the State explained that its decision to divide the charges by the act alleged and location where the alleged act occurred was "the State's effort to be as specific as the victim's disclosure would allow." *Appellant's App.* at 69. The charges alleged acts of molestation that occurred within the applicable statute of limitations and

– except for the charge of sexual misconduct with a minor that Sands does not challenge – before J.D.M. turned fourteen. We, therefore, conclude that the charging information sufficiently informed Sands of the nature of the allegations he faced.

[16] Further, the probable cause affidavit that accompanied the charging information fully explained the nature of the allegations against Sands. The affidavit was based on an interview with J.D.M., in which she described the acts of molestation perpetrated by Sands occurring during every weekend of visitation starting when she was approximately seven years old and continuing until about two weeks after her fourteenth birthday. When determining whether a defendant was sufficiently apprised of the charges against him or her so that he or she can prepare a defense, it is proper to also look at the probable cause affidavit, if any, that was filed with the charging information. *Kaur v. State*, 987 N.E.2d 164, 167 (Ind. Ct. App. 2013). The charging information accurately reflected J.D.M.'s statement that she was repeatedly subjected to the charged acts of molestation throughout the entire period of time alleged in the charging information. Sands was adequately informed of the nature of the charges against him, and the trial court did not abuse its discretion when it denied the Motion.

## II. Inappropriate Sentence

[17] Under Indiana Appellate Rule 7(B), "we may revise any sentence authorized by statute if we deem it to be inappropriate in light of the nature of the offense and the character of the offender." *Corbally v. State*, 5 N.E.3d 463, 471 (Ind. Ct.

App. 2014). The question under Appellate Rule 7(B) is not whether another sentence is more appropriate; rather, the question is whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). It is the defendant's burden on appeal to persuade the reviewing court that the sentence imposed by the trial court is inappropriate. *Chappell v. State*, 966 N.E.2d 124, 133 (Ind. Ct. App. 2012), *trans. denied*.

[18] Sands argues that his eighty-five year sentence is inappropriate in light of the nature of offense and the character of the offender. He specifically contends that the nature of the offense does not justify such a lengthy sentence because all of his counts only involved one victim, he never threatened J.D.M., and J.D.M. testified that, although the crimes were wrong, she did not want Sands to get in trouble, just to stop the molestation. Sands further asserts that his character, likewise, does not justify such a lengthy sentence because he assumed a father figure role to J.D.M. prior to when the molestation was alleged to have begun and he had a minimal, unrelated criminal history. Based on this reasoning, Sands urges this court to reduce his sentence so all of the sentences run concurrently with each other.

[19] Sands's Class A felony child molesting convictions subjected him to imprisonment for a fixed term of between twenty and fifty years. Ind. Code § 35-50-2-4. Sands's Class C felony child molesting conviction subjected him to imprisonment for a fixed term of between two and eight years. Ind. Code § 35-50-2-6(a). Finally, Sands's Class B felony sexual misconduct with a minor

conviction subjected him to a fixed term of punishment of between six and twenty years. Ind. Code § 35-50-2-5.

[20] Here, the trial court's sentence was entirely within the range allowed by statute. The trial court sentenced Sands to forty years for each of his Class A felony child molesting convictions in Counts I through IV with five years of each sentence suspended to probation and all to run concurrently with each other; six years for his Class C felony child molesting conviction with two years suspended to probation and to run concurrently with the other sentences; fifteen years for his Class B felony sexual misconduct with a minor conviction to run consecutively to the other sentences; and thirty years for his Class A felony child molesting conviction in Count VII to run consecutively to the other sentences. This resulted in an aggregate sentence of eighty-five years with five years suspended to probation for a total executed sentence of eighty years. Sands insists that the sentence is inappropriate in light of the nature of the offense and the character of the offender.

[21] As to the nature of the offense, Sands repeatedly molested J.D.M. from the age of seven until after she turned fourteen. Sands subjected J.D.M. to these sexual acts on a nearly nightly basis during each of her visitations with him, which occurred every other week. This translated to hundreds of acts of Class A felony child molesting over six and a half years of J.D.M.'s life. Over the course of this six-and-a-half-year period, Sands had sexual intercourse with J.D.M., performed oral sex on her, had her perform oral sex on him, digitally penetrated J.D.M., and fondled her breasts. In committing these crimes, Sands

abused a position of trust as J.D.M. thought of Sands as her father. We do not find Sands's sentence inappropriate in light of the nature of the offenses.

[22] As to Sands's character, although he does have a criminal history, it is minimal, consisting of only a Class C felony forgery conviction and a misdemeanor failure to provide financial responsibility conviction, both from 1996. However, Sands's abuse of his position of trust with J.D.M. demonstrates his poor character, especially since J.D.M. considered him as her father because he was the only father figure she had in her life. Additionally, J.D.M. testified that she participated in the sexual acts because Sands told her "it was natural" to "do that with your dad" and because he bribed her with food and money. *Tr.* at 209. Further, the long-term nature and the frequency of the molestations contribute to show Sands's poor character. We conclude that his sentence is not inappropriate in light of his character. Therefore, looking at both the nature of the offenses and Sands's character, we do not find his sentence to be inappropriate.

[23] Affirmed.

Friedlander, J., and Crone, J., concur.